**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| **CHRISTIAN VOGELER and** |
| **DEREK J. KIECHLE** |
| |
| Plaintiffs, |
| |
| *- against -* |
| |
| **POLICE OFFICER MICHAEL COLBATH,** |
| |
| Defendant. |

04 Civ. 6071 (LMS)

<u>**DECISION AND ORDER**</u>

This matter is before me by consent of the parties pursuant to 28 U.S.C. §636(c).

Plaintiffs filed this cause of action pursuant to 42 U.S.C. §1983 against Rockland County, Town

of Ramapo Police Officer Michael Colbath, Village of Spring Valley Police Officer Kevin

Freeman, and Unknown Police Officers 1 through 5.  In a stipulation agreed upon by the

Plaintiffs and Defendant Colbath, the claims against Rockland County and Police Officer Kevin

Freeman were dismissed with prejudice.[1]  Plaintiffs claim that Defendant arrested them without

probable cause, impermissibly searched their persons and conducted a strip search, maliciously

prosecuted them, and exerted excessive force during the course of their arrest.  Defendant filed a

motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure

seeking to have all claims against him dismissed.  Plaintiffs then filed a cross-motion for

summary judgment pursuant to Rule 56(a).  For the foregoing reasons, I grant the Defendant's

---

[1] <u>See</u> Docket Entry #40, Stipulation and Order of Discontinuance as to Defendants Rockland
County and Police Office Kevin Freeman.

motion for summary judgment in its entirety and dismiss all claims against him. Accordingly, Plaintiffs' cross-motion for summary judgement on all claims is denied.

## BACKGROUND

The parties do not dispute the following facts that are material to a decision in this case.

On the evening of May 1, 2003, Plaintiffs Christian Vogeler ("Vogeler") and Derek Kiechle ("Kiechle") were inside Room 308 at the Wellesley Inn ("Room 308,") located in Ramapo, NewYork, when the Rockland County Task Force ("Task Force") executed a no-knock search warrant on Room 308. Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts ("Pls' Statement") at ¶¶ 1, 13; Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def's Statement") at ¶ 12. Defendant Michael Colbath ("Colbath,") as a member of the Town of Ramapo Police Department, worked with the Task Force and was present when the no-knock search warrant was executed. Def's Statement at ¶ 1,7; Plaintiffs' Response to Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Pls' Resp.") at ¶¶ 1,7. The Task Force had been conducting an investigation into allegations of narcotics activity within Room 308. Def's Statement at ¶ 8; Pls' Resp. at ¶ 8. As a part of its investigation, the Task Force had utilized the assistance of a confidential informant, and on two occasions had directed him to purchase narcotics from "Nino," the suspected dealer, who was then located in Room 308. Def's Statement at ¶ 9; Pls' Resp. at ¶ 9.

On May 1, 2003, the Task Force obtained a search warrant from a Village of Airmont Justice Court Judge for Room 308. Def's Statement at ¶ 10; Pls' Resp. at ¶ 10. The Task Force, including the Defendant, executed the search warrant. Def's Statement at ¶ 12; Pls' Resp. at ¶

2

12.  Subsequent to execution of the warrant, Plaintiffs Vogeler and Kiechle, along with "Nino," the suspected dealer, were arrested.  Def's Statement at ¶ 19; Pls' Resp. at ¶ 19.  Plaintiffs were handcuffed, placed face-down on the floor, frisked and searched.  Pls' Statement at ¶ 16; Defendant's Response to Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts ("Def's Resp.") at ¶ 16.  While no illegal substances were recovered from the Plaintiffs' persons, Pls' Statement at ¶ 23; Def's Resp. at ¶ 23, the Task Force seized and removed from the room nine clear bags containing a white powder, subsequently identified as cocaine, nine clear bags containing a green leafy substance, later identified as marijuana, an additional sandwich bag containing marijuana, an electronic scale, numerous empty clear zip lock bags, and a sizable amount of U.S. currency.  Def's Statement at ¶ 17; Pls' Resp. at ¶ 17.

Plaintiffs were charged with Criminal Possession of a Controlled Substance in the Third Degree, N.Y. PENAL LAW § 220.16(1) (Consol. 2005), and Unlawful Possession of Marijuana, N.Y. PENAL LAW § 221.05 (Consol. 2005).  Pls' Statement at ¶ 25; Def's Resp. at ¶ 25.  After additional investigation, the District Attorney dismissed the charges.  Pls' Statement at ¶ 27; Def's Resp. at ¶ 27.  Plaintiffs then initiated this cause of action against the Defendants for false arrest and false imprisonment, illegal search and seizure, malicious prosecution and use of excessive force during the course of arrest.

**DISCUSSION**

## A. Introduction

Plaintiffs assert that Defendant Colbath violated their Fourth Amendment rights to be free from false arrest and false imprisonment, to be free from unreasonable searches and seizures, to be free from malicious prosecution, and to be free from excessive force by the police when making an arrest. Plaintiffs' Complaint ("Pls' Compl.") at ¶ 15. The Defendant moves for summary judgment on the first three claims as he had probable cause to arrest the Plaintiffs and therefore cannot be liable. Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def's Mem.") at 1. The Defendant also seeks summary judgment on the Plaintiffs' claim of excessive force as there is no evidence in the record indicating that it was the Defendant who lifted the Plaintiffs from the ground. Def's Mem. at 6. Defendant seeks summary judgment on this claim on the separate ground that any force exerted during the arrest was reasonable, and thus he is entitled to summary judgment as a matter of law. Id. Lastly, Defendant exerts a broad of claim of qualified immunity insulating him from civil liability for his actions, if any, which may have violated the Plaintiffs' constitutional rights.[2] Id. at 11.

Because a review of the record in this case indicates that there are no genuine issues of material fact, I hereby grant the Defendant's motion for summary judgment on all claims and deny the Plaintiffs' cross-motion for summary judgment.

---

[2] Although the Defendant invokes the protection of qualified immunity, I need not determine whether he is entitled to its protection because I conclude at no point did he violate the Plaintiffs' constitutional rights. Under the Supreme Court's holding in Saucier v. Katz, 533 U.S. 194, 201 (2001), a court must conduct a two-step analysis when determining whether a police officer is entitled to qualified immunity. A court must first determine whether the defendant violated the plaintiff's constitutional rights. Id. If the court determines that the defendant's actions did not constitute a violation, the qualified immunity analysis ends. Id.

B.  <u>Summary Judgment</u>

Under the Federal Rules of Civil Procedure, summary judgment "shall be rendered

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); Celotex Corp. v.

Catrett, 477 U.S. 317, 320-23 (1986).  "Upon any motion for summary judgment pursuant to Rule

56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a

separate, short, and concise statement, in numbered paragraphs, of the material facts as to which

the moving party contends there is no genuine issue to be tried.  Failure to submit such a

statement may constitute grounds for denial of the motion."  LOCAL CIV. R. 56.1(a).  A fact is

"material" when it may affect the outcome of a case under the governing substantive law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A dispute about a material fact is

"genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.  Id.  A trial judge may, therefore, grant summary judgment only if there is no genuine issue

as to any material fact and if the moving party is entitled to judgment as a matter of law.  Id. at

250.  The inquiry performed is the threshold inquiry of determining whether there are any genuine

factual issues that properly can be resolved only by a finder of fact.  Id.

Where a properly supported motion for summary judgment is made, the adverse

party "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P.

56.  Under Local Rule 56.1(b), "the papers opposing a motion for summary judgment shall

include a correspondingly numbered paragraph responding to each numbered paragraph in the

statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." LOCAL CIV. R. 56.1(b).  Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original).  "The nonmoving party must have 'had the opportunity to discover information that is essential to his [or her] opposition' to the motion for summary judgment." Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir.1989) (quoting Anderson, 477 U.S. at 250 n. 5).  Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2.  Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. of New York, Inc. v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

In the present case, a review of the record shows that there is no genuine issue of any material facts and that therefore, the Defendant, the moving party, is entitled to a judgment as a matter of law, FED. R. CIV. P. 56(c), and Plaintiffs' cross-motion for summary judgment must be denied.

C.  Plaintiffs' Causes of Action

1.  False Arrest and False Imprisonment

To successfully establish a cause of action for false arrest and false imprisonment, each Plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (citations omitted); Boose v. Rochester, 421 N.Y.S.2d 740, 745 (N.Y. App. Div 1979).  Probable cause is a complete defense to the claims of false arrest and false imprisonment. Bernard v. U.S., 25 F.3d 98, 102 (2d Cir. 1994).  The burden is on the Defendant to show the existence of probable cause as an affirmative defense.  Broughton v. State of New York, et. al., 37 N.Y.2d 451, 458 (1975).

Defendant is entitled to summary judgment on the claims of false arrest and false imprisonment because he had probable cause to arrest the Plaintiffs.  Under the Fourth Amendment, a police officer must have probable cause to arrest an individual without an arrest warrant.  Beck v. Ohio, 379 U.S. 89, 91 (1964).  A constitutionally valid arrest turns upon whether the police had the requisite "facts and circumstances within their knowledge . . . to warrant a prudent man in believing that the [individual] [has] committed or was committing an offense."  Id.  It is undisputed that on May 1, 2003, the Defendant entered Room 308 pursuant to a search warrant issued by a Village of Airmont Justice Court Judge.  Def's Statement at ¶ 12; Pls' Resp. at ¶ 12.  It is also undisputed that the Plaintiffs were present in the room when the search warrant was executed.  Def's Statement at ¶ 16; Pls' Resp. at ¶ 16.  Once in the room, the

Defendant seized several transparent zip lock bags that were identified via field testing as

containing cocaine and marijuana, an electronic scale, and a large quantity of U.S. currency.[3]

Def's Statement at ¶ 17. Moreover, the Task Force's confidential informant reported that a drug

transaction had occurred in Room 308 in the Plaintiffs' presence just prior to the officers'

execution of the search warrant. Defendant's Affirmation in Reply and in Opposition to

Plaintiffs' Cross-Motion for Summary Judgment ("Def's Opp'n Statement"), Ex. C.

The presence of illegal narcotics within Room 308, as well as the information relayed by

the confidential informant, gave the Defendant sufficient probable cause to arrest the room's

occupants based upon the suspicion that they committed or were committing a criminal offense.

See Beck, 379 U.S. at 91; Provost v. City of Newburgh, 262 F.3d 146, 157 (2d Cir. 2001).

Defendant's motion for summary judgment on the Plaintiffs' claim of false arrest and false

imprisonment must be granted therefore, because the Defendant had probable cause to arrest

---

[3] The Plaintiffs correctly point out that there is an inconsistency in the Defendant's testimony regarding the location of the currency seized from Room 308. Compare Pls' Statement Ex. 9 at 7 (grand jury testimony of Defendant that U.S. currency recovered from clothing found within Room 308), with Pls' Statement Ex. 15 at ¶ 4 (Defendant's affadavit stating that money recovered from tabletop in corner of Room 308). This discrepancy, however, is of no value to the Plaintiffs because the issue surrounding the currency's location within Room 308 is not a material fact. In order for a fact to be material, and thus meaningful for this court to examine on a motion for summary judgment, the fact must alter or possibly alter the outcome of the case. Anderson, 477 U.S. at 248. Immaterial facts have no bearing on this court in deciding a motion for summary judgment. Celotex Corp, 477 U.S. at 323.

Moreover, Plaintiff Voegeler's grand jury testimony and Plaintiff Kiechle's depositions are not without inconsistency either. Plaintiff Vogeler claims that Plaintiff Kiechle was driving on the evening of May 1, 2003. See Pls' Statement Ex. 8 at 5, lines 12-14; see also Pls' Statement Ex. 12 at 10-11, lines 25-1. Plaintiff Kiehcle, however, claims Plaintiff Vogeler was driving on the night of May 1, 2003. See Pls' Statement Ex. 11 at 13 lines 16-24. While this inconsistency does not go to a material fact either, it is worth noting that neither Plaintiffs' nor Defendant's statements are wholly consistent.

them.  Broughton, 37 N.Y.2d at 458.

Defendant cites to N.Y. PENAL LAW §220.25(2) (Consol. 2005) as additional support for his argument that he had sufficient probable cause to arrest the Plaintiffs subsequent to the search warrant's execution.  N.Y. PENAL LAW §220.25(2) provides, in part,

> [t]he presence of a narcotic drug, narcotic preparation, marihuana or phencyclidine in open view in a room, other than a public place, under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare for sale such controlled substance is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found . . . .

New York's statutory constructive possession presumption, however, is subsidiary to the primary establishment of probable cause to arrest the Plaintiffs stemming from the Defendant's seizure of illegal narcotics from the hotel room in which they were located.  Thus, the contentions Plaintiffs raise regarding their awareness of narcotics in plain view and their personal proximity to the narcotics are of no issue.[4]  The Plaintiffs' presence in Room 308 during an illegal narcotics distribution, as well as their presence in the room when illegal narcotics were seized, provided the requisite probable cause to substantiate their arrest.

Because the Defendant had sufficient probable cause to arrest the Plaintiffs, I must grant the Defendant's motion for summary judgment on the Plaintiffs' false arrest and false

---

[4] Plaintiffs assert that they were unaware of the presence of illegal narcotics within Room 308.  Pls' Statement at ¶ 10.  Their subjective awareness and proximity to the narcotics, however, is of no importance in this instance because the Defendant had probable cause to arrest the Plaintiffs upon the seizure of illegal narcotics from the room.  See, e.g. Maryland. v. Pringle, 540 U.S. 366, 374 (2003) (holding officer had probable cause to believe individual possessed cocaine and therefore could arrest individual, absent a warrant, based upon presence of narcotics and money within car).

imprisonment causes of action.

2. Illegal Search and Seizure

a. Search of Plaintiffs' Persons

Plaintiffs additionally assert that the Defendant violated their Fourth Amendment rights to be free from illegal searches and seizures when the Defendant searched their persons. Because the Defendant entered Room 308 and searched the Plaintiffs' persons pursuant to a valid search warrant, and permissibly searched their persons under the search-incident-to-arrest doctrine, the Defendant's motion for summary judgment must be granted.

In accordance with the requirements established by the United States Supreme Court, a search warrant is valid if it is issued by a neutral and disinterested magistrate upon a showing by affidavit of probable cause. Dalia v. U.S., 441 U.S. 238, 255 (1979). The search warrant must also describe with sufficient particularity the location to be searched, the items to be seized, and the persons who may be searched. Id.

In addition to these fundamental requirements, New York courts recognize the constitutionality of an "all persons" search warrant, such as the one used here, when probable cause exists to believe that any and all individuals found within a given location are involved in criminal activity. Campbell v. Fernandez, 54 F. Supp. 2d 195, 197 (S.D.N.Y. 1999); People v. Nieves, 36 N.Y. 2d 396, 404 (1975). Most commonly, "all persons" search warrants are issued when the police suspect illegal narcotics trafficking or distribution from a particular location, but are unable to name the specific individuals to be searched. See, e.g. People v. Miner, 510 N.Y.S.2d 300, 302 (N.Y. App. Div 1987) ("all persons" search warrant valid where probable

cause existed to believe area and persons involved in drug trafficking); People v. Soler, 460

N.Y.S.2d 537, 541 (N.Y. App. Div. 1983) (search of bystander in room during execution of "all

persons" search warrant valid because of suspected drug trafficking) .

The Defendant entered Room 308 pursuant to a validly executed search warrant

authorizing the search of "all persons" found within Room 308. Defendant's Affidavit in Support

of Motion for Summary Judgment ("Def's Aff."), Ex. B. A neutral and disinterested judge issued

a sufficiently particular search warrant identifying the location to be searched and the items to be

seized. Def's Aff., Ex. B. The judge issued the search warrant upon receiving the Defendant's

affidavit establishing probable cause. The Defendant developed probable cause to believe

criminal activity was taking place within Room 308 based upon the information provided by a

confidential informant working with the Task Force. A police officer may rely upon the reports

of an informant to establish probable cause when the "totality of the circumstances" indicates that

the informant's information is reliable and truthful. Illinois v. Gates, 462 U.S. 213, 238 (1983).

The Defendant had reason to rely on the confidential informant's information based upon two

prior successful drug transactions the informant conducted with "Nino," within Room 308, at the

request of the Task Force. Def's Aff., Ex. B at ¶¶ 5 & 6. Based upon these transactions, the

Defendant could conclude with sufficient probability that criminal activity was afoot in Room

308. People v. Miner, 510 N.Y.S.2d 300, 302 (N.Y. App. Div 1987) (two controlled purchases of

illegal narcotics is sufficient evidence to establish probable cause of "activity inconsistent with

innocent behavior.").

Because the Defendant entered Room 308 and searched the Plaintiffs' person pursuant to

a valid search warrant, the Defendant is entitled to summary judgment on the Plaintiffs' claims of illegal search and seizure.

In addition to the authority to search the Plaintiffs per the search warrant, the Defendant was also authorized to search the Plaintiffs' persons under the "search incident to arrest" doctrine articulated by the Supreme Court in <u>Chimel v. California</u>, 395 U.S. 752 (1969). In <u>Chimel</u>, the Supreme Court recognized that it is reasonable for a police officer to conduct a search of the arrestee's person, and the area around the aresstee's person, known as his or her wing span, even in the absence of a warrant. 395 U.S. at 763.

Naturally, <u>Chimel</u>'s search-incident to arrest doctrine only applies when there is a valid basis for an arrest. As noted, <u>supra</u>, upon entering Room 308 to execute the valid search warrant, the Defendant found several transparent zip lock bags, later identified as containing cocaine and marijuana, as well as an electronic scale and a large quantity of U.S. currency. The presence of such narcotics and drug paraphernalia within Room 308 provided the Defendant ample justification to arrest the Plaintiffs on the suspicion that they were involved in the commission of a crime. Because the Defendant had probable cause to arrest the Plaintiffs, the Defendant was authorized to search their persons upon arrest under <u>Chimel</u>.

Plaintiffs cite to <u>Ybarra v. Illinois</u>, 444 U.S. 85 (1979), in support of the proposition that the search of their persons was unconstitutional. Reliance on <u>Ybarra</u>, however, is mistaken. <u>Ybarra</u> dealt with the execution of a no-knock search warrant at a tavern. 444 U.S. at 88. The search warrant only authorized the police to search the tavern and one named suspect, the bartender. <u>Id.</u> Upon entering the tavern, however, the police frisked all persons located within

the tavern, including petitioner Ybarra. Id. As a result of the frisk of Ybarra's person, the police seized a package of cigarettes containing heroin. Id. at 89.

In suppressing the evidence of narcotics possession, the Supreme Court held that each person who entered the tavern continued to hold his or her individualized Fourth Amendment right to be free from unreasonable searches and seizures. Id. at 91. The Court noted that "a search or seizure of a person must be supported by probable cause particularized with respect to that person." Id. The Court held that the reasonable suspicion required to frisk each occupant of the tavern could not be extrapolated from the probable cause supporting the issuance of the search warrant. Id.

The present situation, however, is markedly different from the one posed in Ybarra. Unlike Ybarra, where the search warrant only authorized the search of the premises and one individual, here, the Defendant entered Room 308 with a search warrant authorizing him to search "[a]ll persons found within [Room 308 of the Wellesley Inn]." Def's Aff., Ex. B. Additionally, upon entry, the Defendant seized several clear bags containing illegal narcotics from a table located towards the back of the room. Pls' Statement Ex. 6 at 6-7, lines 18-4. Differing from Ybarra, here, illegal contraband was *first* found within the room *and then* the Defendant searched the Plaintiffs. In Ybarra, just the opposite was true: the initial search of the petitioner led the police to discover illegal contraband. Cf. Md. v. Pringle, 540 U.S. 366, 373 (2003) (noting the Fourth Amendment protection recognized in Ybarra does not equally apply to individuals in private locations who are in close proximity to illegal narcotics).

Unlike Ybarra, in which the petitioner was frisked only because of his presence in the bar,

13

the Plaintiffs here were arrested and searched due to the presence of illegal narcotics within the room. Additionally, the properly issued search warrant authorized the searches of the Plaintiffs' persons. Accordingly, the Defendant is entitled to summary judgment on Plaintiffs' claim of illegal search and seizure.

      b. <u>Strip Search</u>

Plaintiffs additionally assert their constitutional right to be free from illegal searches and seizures was violated when they were subjected to full body strip searches subsequent to their arrest. Plaintiffs are correct in arguing that pre-trial detainee strip searches are governed by the Fourth Amendment's reasonableness standard. <u>Weber v. Dell</u>, 804 F.2d 796, 802 (2d Cir. 1986). Plaintiffs are unable, however, to establish that the Defendant was the individual who conducted the strip searches. In order for Plaintiffs to succeed on their §1983 claim for illegal search and seizure, Plaintiffs must establish, with sufficient definiteness, the precise actor or actors who deprived them of their constitutional rights. See <u>Blyden v. Mancusi</u>, 186 F.3d 252, 264 (2d Cir. 1994) (personal involvement of defendant prerequisite to award of damages under 1983); <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977) (absence of evidence of defendant's personal involvement in alleged deprivation of rights fatal to §1983 claim against defendant). Because the Plaintiffs have not provided sufficient evidence from which a finder of fact could conclude that the Defendant conducted or oversaw the strip searches, their claim cannot survive the Defendant's motion for summary judgment.

The evidence put forth by Plaintiffs fails to identify the Defendant as the police officer who conducted the strip search. The deposition of Plaintiff Vogeler ends with the Plaintiff

explicitly denying that he had "any interaction with Police Officer Colbath" on the evening of May 1, 2003. Pls' Statement Ex. 12 at 48, lines 20-22. Plaintiff Kiechle's deposition only affirms the fact that he was strip searched; at no time does the Plaintiff identify who conducted the strip search. Pls' Statement Ex. 11 at 43, lines 18-22.

Plaintiffs assert that the Defendant's name on their arrest reports establishes that the Defendant was the officer who "oversaw" their respective strip searches. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiffs' Cross Motion for Summary Judgment ("Pls' Memo") at 12. Such a nominal assertion on the part of the Plaintiffs, without more, does not create a genuine issue of material fact. See Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (a "non-moving party may not rely on conclusory allegations or unsubstantiated speculation" when attempting to establish a genuine issue of material fact). The Defendant, however, testified that his presence in Room 308 was only to serve as the evidence officer, the individual responsible for gathering any illegal contraband seized during the execution of a search warrant. Pls' Statement Ex. 6 at 6, lines 1-9. While Defendant's name is on the arrest report for both Plaintiffs, Pls's Statement Ex. 2 and Ex 4, absent more specific evidence upon which a jury could find that the Defendant administered or oversaw the challenged strip searches, this court must grant the Defendant's motion for summary judgment on the claim of unconstitutional strip searches.

### 3. Malicious Prosecution

Plaintiffs also assert a claim of malicious prosecution. The elements of malicious prosecution in New York are: "(1) the defendant commenced or continued a criminal proceeding

against plaintiff, (2) the proceeding terminated in plaintiff's favor, (3) there was no probable

cause for the criminal proceeding, and (4) the defendant initiated the criminal proceeding out of

malice."  Bernard v. U.S., et. al., 25 F.3d 98, 104 (2d Cir.1994) (citation omitted).  Some type of

judicial proceeding must occur prior to the complained of deprivation of rights because the

"essence of malicious prosecution is the perversion of proper legal procedures."  Singer, 63 F.3d

at 117 (quoting Broughton v. State of New York, 37 N.Y.2d 451, 457 (1975)).  Generally, the

required judicial proceeding is in the form of a warrant, an arraignment, or an indictment by a

Grand Jury.  Singer, 63 F.3d at 117.  A claim for malicious prosecution cannot survive summary

judgment absent evidence of bad faith or malice on the part of the police.  Bernard, 25 F.3d at

104..

    In the present case, the Defendant served as the affiant for the search warrant leading to

the arrest and search of the Plaintiffs' persons.  Pls' Statement at Ex. 7.  Plaintiffs were

subsequently charged with Criminal Possession of a Controlled Substance in the Third Degree,

N.Y. PENAL LAW § 220.16(1) (Consol. 2005), and Unlawful Possession of Marijuana, N.Y.

PENAL LAW § 221.05 (Consol. 2005).  Akin to the absolute probable cause defense Defendant can

raise to the false arrest and false imprisonment claim, and the illegal search and seizure claim,

Defendant is also entitled to summary judgment on the malicious prosecution charge because he

acted pursuant to probable cause.  Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003).  As

explained, supra, Defendant had probable cause to believe that criminal activity was conducted

within Room 308 of the Wellesley Inn based upon the information provided by the confidential

informant.  See supra, Sections (C)(1) and (C)(2).  Using this information, the Defendant validly

obtained a search warrant.  Upon entry into Room 308, the Defendant seized several bags of

illegal narcotics, including cocaine and marijuana, arrested the Plaintiffs, and conducted a valid search of their persons. As such, the Plaintiffs cannot establish that the Defendant acted without the requisite probable cause necessary to establish a successful claim of malicious prosecution.

Moreover, Plaintiffs have asserted no evidence of actual malice on the part of the Defendant. Evidence of actual malice is required to establish an actionable claim for malicious prosecution. Such evidence can be inferred from a lack of probable cause, Sulkowska v. City of New York, 129 F. Supp. 2d. 274, 295 (S.D.N.Y. 2001), by proof of the defendant's recklessly or grossly negligent conduct, Boose v. Rochester, 421 N.Y.S. 2d 740, 749 (N.Y. App. Div. 1979), or by some evidence that the Defendant had an improper motive for initiating the proceedings, Hernandez v. City of Rochester, 260 F. Supp 2d 599, 615 (W.D.N.Y. 2003).

In this case, actual malice cannot be inferred from the lack of probable cause because the Defendant had the requisite probable cause to believe Room 308 was being used for criminal purposes, to arrest the Plaintiffs, and to search their persons. Plaintiffs' only offer of evidence of Defendant's actual malice is a taunt, attributed to the Defendant by Plaintiff Kiechle, upon the Plaintiffs' arrest. Pls' Statement Ex. 11 at 28, lines 7-12 (unidentified member of the Task Force told Plaintiffs they "were in trouble," upon arrest). This statement, alone, neither establishes actual malice, nor evinces bad faith on the part of the Defendant required for a successful malicious prosecution cause of action.[5] Hernandez, 260 F. Supp. 2d. at 615 (absence of evidence of improper motive fatal to malicious prosecution claim on summary judgment) .

---

[5] Further supporting Defendant's motion for summary judgment is the fact that this statement is not even firmly attributed to the Defendant. See Pls' Statement Ex 11 at 28, lines 7-12.

Because the Plaintiffs have failed to establish evidence of the required actual malice for a successful malicious prosecution claim, and because the Defendant had probable cause to obtain a search warrant and arrest the Plaintiffs, Defendant's motion for summary judgment on the Plaintiffs' malicious prosecution claim is granted.

4. Excessive Force

Unlike Plaintiffs' three other causes of action, Plaintiffs' claim for excessive force does not turn on whether the Defendant acted upon the requisite degree of probable cause, but whether the Defendant's conduct was "objectively reasonable" in light of the facts and circumstances as presented to the Defendant at the time of the Plaintiffs' arrest. Graham v. Connor, 490 U.S. 386, 397 (1989) (quoting Scott v. U.S., 436 U.S. 128, 137-139 (1978)). In order to succeed on a claim of excessive force, the Plaintiffs must put forth evidence that the Defendant's conduct was "objectively sufficiently serious or harmful. . . . " U.S. v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999). Generally, the force used by the Defendant must be more than de minimis in order for the Plaintiffs' claim to be actionable. Graham, 490 U.S. at 397; Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993). Finally, Plaintiffs must also allege, and support with evidence, the personal involvement of the Defendant in the actions underlying their claim. Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (personal involvement of Defendant is predicate for award for damages under §1983).

Plaintiffs base their excessive force claim upon two separate instances during the course of their arrest. First, Plaintiffs claim they were both subjected to tight handcuffing when arrested. Pls' Memo. at 13. Second, Plaintiffs claim they were lifted and dragged off the ground by their

arms when their hands were cuffed behind their backs. Id. Like their other claims, because the record does not establish a genuine issue of material fact, I grant Defendant's motion for summary judgment.

a. Tight Handcuffing

When analyzing a claim of excessive force based upon the use of handcuffs, in addition to evidence of the fact that the handcuffs were too tight and that the Plaintiffs' requests for them to be loosened went unanswered, the court may consider the degree of injury suffered by the Plaintiffs. Esmont v. City of New York, 371 F. Supp 2d 202, 215 (E.D.N.Y. 2005). While tight handcuffing, alone, can give rise to a cause of action under §1983, Simpson v. Saroff, 741 F. Supp. 1073, 1078 (S.D.N.Y. 1990), the plaintiffs must suffer some form of injury from the tight handcuffs in order for such a claim to be actionable. Id. (excessive force claim proper when tight handcuffing lead to bloody wrist and scarring). Though the Plaintiffs' injuries need not be severe or permanent, some injury must be asserted. Esmont, 371 F. Supp 2d at 215.

Both Plaintiffs claim they were tightly handcuffed when arrested, Pls' Statement Ex. 11 at 41, lines 12-13; Pls' Statement Ex. 12 at 46 lines 9-11, and that their requests for their cuffs to be loosened went unheaded. Pls' Statement Ex. 11 at 47, lines 2-7; Pls' Statement Ex. 12 at 46, lines 9-20. Despite these complaints, Plaintiff Kiechle testified that he was neither injured nor hurt during the course of arrest. Pls' Statement Ex. 11 at 41, lines 66-67. Plaintiff Vogeler also testified that he was not hurt during the course of his arrest. Pls' Statement Ex.12 at 46, lines 21-23 and Ex. 12 at 47, lines 6-10. Neither Plaintiffs' testimony establishes they suffered any harm, let alone any measurable harm. Unlike prior excessive force cases where plaintiffs have survived

summary judgment by putting forth evidence of bleeding and scarring, <u>Simpson</u>, 741 F. Supp at 1078, or prolonged bruising, <u>Robinson v. Via</u>, 821 F.2d 913 (2d Cir. 1993), the Plaintiffs' mere claims of minor discomfort do not establish a triable issue that can withstand Defendant's motion for summary judgment. <u>Esmont</u>, 371 F. Supp. 2d. at 215 (quoting <u>Carter v. Morris</u>, 164 F.3d 215, 219, n.3 (4th Cir. 1999)).

b. <u>Handling of the Plaintiffs' Persons</u>

Plaintiffs also claim that they were lifted off the ground by their arms while lying handcuffed face down on the ground. Pls' Statement Ex 11 at 68, lines 16-24; Pls' Statement Ex. 12 at 47, lines 8-10. This claim, however, suffers from many of the same defects that the Plaintiffs' other causes of action suffer. Plaintiffs have neither provided sufficient evidence to establish that the Defendant was personally involved in the excessive force, <u>Hernandez</u>, 341 F.3d at 144, nor have they proven that they suffered any injury from the complained-of activity. <u>Esmont</u>, 371 F. Supp. 2d. at 215. As such, the Plaintiffs fail to establish a triable issue of fact that can survive Defendant's motion for summary judgment.

While both Plaintiffs complain of being lifted from the ground while handcuffed, Pls' Statement at ¶ 3, neither Plaintiff has identified the offending officer. Both Plaintiffs' depositions are replete with generic references to "the officers," and allusions to multiple police officers being present during the course of their arrest. <u>See</u>, <u>e.g.</u> Pls' Statement Ex. 11 at 28; Pls' Statement Ex. 12 at 22, 47. Plaintiff Kiechle is unable to identify the police officer or officers that physically handled him that evening. Pls' Statement Ex. 11 at 66. Likewise, Plaintiff Vogeler cannot recall any police officer exhibiting any "vicious propensities" or using excessive force during the course

of the arrest. Pls' Statement Ex. 12 at 33-34, lines 25-7. Most explicit, Plaintiff Vogeler claims

he had no personal interaction with the Defendant on the night of his arrest, May 1, 2003. Pls'

Statement Ex. 12 at 48, lines 20-22.[6]

Assuming, *arguendo*, that Plaintiffs could establish that the Defendant was the individual

who physically lifted them from the ground, the Defendant's actions would be assessed against

the Fourth Amendment's reasonableness standard. Saucier v. Katz, 533 U.S. 194, 204 (2001);

Graham v. Connor, 490 U.S. 386, 397 (1989). Under this standard, the police have the latitude to

"use some degree of physical coercion or threat thereof" to effectuate an arrest. Graham, 490

U.S. at 396. Factors that a court may consider when evaluating an excessive force claim include

the severity of the crime, whether the suspect posed a threat to the officers, and whether the

suspect was resisting or attempting to evade arrest. Id.

In their motion for summary judgment, Plaintiffs employ the tautological argument, "no

use of force was permitted because none was required." Pls' Mem. at 13. The standard

articulated by the Supreme Court, however, is not whether force was required, but rather whether

the use of force was reasonable under the circumstances as presented to the officers at the time of

arrest. Graham, 490 U.S. at 396. As has been quoted numerous times when assessing excessive

force causes of action, "[n]ot every push or shove, even if it may later seem unnecessary in the

peace of a judge's chambers, violates the Fourth Amendment." Id. (internal citations omitted).

---

[6] In fact, this is the only time the Defendant is mentioned by name during the course of either
Plaintiffs' deposition. Though having no legal significance, it is interesting to note that the only
reason the Defendant's name appears anywhere in the course of either Plaintiffs' deposition
provided to the court is because it was brought up by Mr. Specht, an attorney for the Town of
Ramapo.

Plaintiffs' claim that the Defendant exerted "gratuitous and unnecessary" force during the course of their arrest cannot withstand Defendant's motion for summary judgment. While Plaintiffs may have been lifted in an unconventional manner, they have failed to show that such action was any more than de minimis force exerted during the course of an arrest following the raid of a suspected drug trafficking locale. See, e.g. Roundtree v. N.Y., 778 F. Supp 614, 622-23 (E.D.N.Y. 1991) (defendant's motion for summary judgment on claim of excessive force proper when plaintiff suffered no physical injuries and required no medical attention); but see, Maxwell v. City of New York, 380 F.3d 106, 109 (2d Cir. 2004) (allowing an excessive force claim to survive defendant's motion for summary judgment when plaintiff suffered from post-concussive syndrome).

Because the Plaintiffs have failed to produce the requisite proof required to establish a "genuine issue of material fact" regarding their claims of excessive force against the Defendant, the Defendant's motion for summary judgment on the claim for excessive force must be granted.

**CONCLUSION**

For the foregoing reasons, I grant the Defendant's motion for summary judgment in its entirety. Accordingly, I deny the Plaintiffs' cross-motion for summary judgment.

## CONCLUSION

For the foregoing reasons, I grant the Defendant's motion for summary judgment in its entirety. Accordingly, I deny the Plaintiffs' cross-motion for summary judgment.

Dated: October 6, 2005
      White Plains, New York

**SO ORDERED**

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York